UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                     )
JANICE VINES,                        )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        Civil Action No. 04-1840 (RBW)
                                     )
ROBERT GATES,[1]                     )
Secretary of the Department of Defense, )
                                     )
            Defendant.               )
_____ )


## MEMORANDUM OPINION

The plaintiff, Janice Vines, brings this action pursuant to Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. §§ 2000(e), et seq., alleging discrimination on the basis of race,

sex, color, and national origin, and for retaliation resulting from her participation in protected

activity.  Complaint ("Compl.") ¶¶ 2, 52.  Specifically, the plaintiff alleges that she was

discriminated against on the basis of her race (black), sex (female), and her national origin

(African American) when she was not selected for the GS-343-5/11 Program Analyst position

with the Naval Facilities Engineering Services Center of the Department of the Navy

("NFESC") and for other positions to which she had been detailed during her employment by the

NFESC.  Compl. ¶¶ 53, 57.  In addition, the plaintiff alleges that Ms. Edith Dawn Smith and Ms.

Susan M. Kirk retaliated against her by verbally attacking her and the defendant took no action to

correct or prevent the retaliation by failing to relocate her to a different work location.  Compl. ¶¶

_____

[1] Mr. Gates has been substituted as the proper defendant pursuant to Fed. R. Civ. P. 25(d).

63, 64.  Currently before this Court are: (1) the defendant's Motion for Summary Judgment ("Def.'s Mot."); (2) the plaintiff's Opposition to the Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); and (3) the defendant's Reply in Support of Motion for Summary Judgment. ("Def.'s Reply Mem.").

## I.  Factual Background[2]

### A.  Program Analyst Position (GS-343-5/11)

The plaintiff has been employed by the NFESC for over thirteen years.  Compl. ¶6.  On or about August 22, 2002, the NFESC  issued a Vacancy Announcement for a GS-343-5/11 Program Analyst position with the East Coast Detachment Financial Division (ESC13) of the NFESC.  Def.'s Mot., Exhibit ("Ex.") 2 (Upward Mobility Program Training Opportunity Announcement) ("Upward Mobility Announcement").  On October 30, 2002, a noncompetitive certificate was issued indicating that two people applied for the GS-343-5/11 Program Analyst position, the plaintiff and Linda Curatolo, a  Caucasian female.  Def.'s Mot., Ex. 3 (Noncompetitive Certificate for GS-343-5/11 Program Analyst) ("Noncompetitive Certificate"). Steven Robert Marshall, the Financial Manager/Comptroller and the selecting official, received the two application packages and convened a panel to review the resumes and interview the candidates. Def.'s Reply, Ex. 3 (Steven Robert Marshall Deposition ) ("Marshall Dep.") at 6.

---

[2] As a result of the plaintiff's willful disregard for this Court's orders, including the plaintiff's failure to comply with this Court's discovery Orders and the Federal Rules of Civil Procedure, on March 21, 2006, the Court ordered that the matters about which the plaintiff failed to properly respond in compliance with the Defendant's Requests for Admissions would be considered " established for the purpose of [this] action," and the Court further prohibited the plaintiff  "from introducing evidence which would otherwise support the claims [about] which the plaintiff failed to provide supplemental information."  See Def.'s Mot., Exhibit 1("March 21, 2006 Order.")

The interviewing panel consisted of James Flynn, Keith Kirkpatrick, Sr., Commander Robin

Noyes, and Edith Dawn Smith. Id., Ex. 4 (Grading for Program Analyst GS-343-05/07/09/11

Position); Ex. 5 (Affidavit of Edith Dawn Smith) ("Smith Aff.) at 419-20.  Only Mr. Flynn, Mr.

Kirkpatrick, and Commander Noyes were voting members of the panel.  Id.  The panel members

were chosen by Mr. Marshall based on their perceived independence and objectivity.  Def.'s

Reply, Ex. 3 (Marshall Dep.) at 15.  When the panel members were selected by  Mr. Marshall he

did not believe any of them had any  conflicts of interest.  Id. at 57:3-9.  He was aware of an

employment related relationship between Ms. Smith and Ms. Curatolo, and he believed that Ms.

Smith and the plaintiff were friends.  Id. at 74-75.

Identical questions for each candidate were developed prior to the commencement of their

interviews.  Id. at 19:10-13.  Ms. Smith's participation in the interviews, asking the candidates

questions from these  pre-selected questions.  Id., Ex. 5 (Declaration of Edith Dawn Smith)

("Smith Decl.") at 5-6; Id., Ex. 6 (Declaration of Keith Kirkpatrick, Sr.) ("Kirkpatrick Decl.") at

6; Def.'s Mot., Ex. 7 (Declaration of Robin Noyes) ("Noyes Decl.") at 7.  Additionally, the panel

members asked additional questions about the candidates' experiences and qualifications for the

job.  Def.'s Reply, Ex. 6 (Kirkpatrick Decl.) at 6.  The panel based their grading of the candidates

on their assessment of their resumes, interviews, and qualifications.  Id., Ex. 4 (Grading for

Program Analyst GS-343-05/07/09/11); Ex. 6 (Kirkpatrick Decl.) at p. 6.  No inappropriate

comments were made by the panel members about  the candidates during the selection process,

including comments about  their race, color, gender, or ethnicity.  Def.'s Reply, Ex. 6

(Kirkpatrick Decl.) at 6; Ex. 8 (Noyes Decl.) at 8.  The panel gave each candidate  scores of 198.

Def.'s Reply, Ex. 4 (Grading for Program Analyst GS-343-05/07/09/11 Position).  Thus, the

panel's recommendation to the selecting official was that both candidates were equally qualified for the position.  Id., Ex. 7 (Declaration of James Flynn) ("Flynn Decl.") at 5.  However, although Ms. Smith was not a voting member on the panel, she raised questions with Mr. Marshall about the accuracy of the plaintiff's resume.  Id., Ex. 1 (Marshall Dep.) at 38, 47, 50, 53, 68-69, 83.

Since each candidate received equal ratings by the panel, Mr. Marshall took the additional step of speaking to each candidates' supervisor to gain further information and clarification about the information contained on their resumes.  Id., Ex. 3 (Marshall Dep.) at 7-8, 64.   Mr. Marshall contacted Captain David Bulk in regards to Ms. Curatolo, and Mr. Raecke in regards to the plaintiff.  Id., Ex. 8 (Marshall Dep.) at 6.  By speaking to the supervisors, Mr. Marshall gathered information pertaining to each of the candidates' work habits, the work they performed, and the quality of their performance. Id.,  Ex. 3 (Marshall Dep.) at 7.

Based on the conversations Mr. Marshall had with the candidates' supervisors and the panel members, his review of their resumes and interview scores, he selected Ms. Curatolo for the GS-343-05/11 Program Analyst position.  Id., Ex. 3 (Marshall Dep.) at 7-8, 64.  In deciding to choose Ms. Curatolo for the position, Mr. Marshall believed after speaking to the plaintiff's supervisor that the plaintiff had embellished her resume, which caused Mr. Marshall to call into question  her qualifications.  Def.'s Reply, Ex. 3 (Marshall Dep.) at 7-8, 64.  Specifically, Mr. Marshall contends that his consultation with the plaintiff's supervisor (Mr. Raecke) caused him to conclude that she "did not perform all of the functions that she had stated in her resume."  Id.

This caused Mr. Marshall to question the accuracy of the plaintiff's resume. Id. at 64.[3]

Following her non-selection, the plaintiff sought informal Equal Employment Opportunity ("EEO") counseling on December 6, 2002. Def.'s Mot., Ex. 6 (Washington D.C. Field Office ORM Initial Interview Sheet). In her administrative complaint, she alleged only that the selection of Ms. Curatolo for the Program Analyst position was discriminatory, and confirmed that she had never before filed an EEO complaint relating to non-selection for other positions with the defendant. Id. at 1-2.

**B.** **Allegations Concerning Disputes Between the Plaintiff and Her Coworkers**

Throughout the course of her employment, the plaintiff had several verbal altercations with Dawn Smith and Susan Kirk. Compl. ¶¶ 40, 44, 46. The plaintiff has never filed an EEO complaint relating to these alleged verbal altercations and the incidents were not included in her EEO complaint that was filed with the Washington Field Office in December 2002. Def.'s Mot., Ex. 1 (March 21, 2006 Order), Ex. 4 (Defendant's Requests for Admissions to Plaintiff Nos. 5-7), Ex. 6 (Washington D.C. Field Office ORM Initial Interview Sheet). One of the verbal altercations between the plaintiff and Ms. Kirk occurred in April 2003, resulting in Commander Noyes intervening and attempting to defuse the situation by talking with them about the topic of the altercation–a problem related to the time cards. Def.'s Mot., Ex. 7 (Affidavit of Commander Robin Noyes) ("Noyes Aff.") at 13. However, this incident has no connection to any protected activity engaged in by the plaintiff. Def.'s Mot., Ex. 1 (March 21, 2006 Order), Ex. 4 (Defendant's Requests for Admissions to Plaintiff No. 5).

---

[3]During the hiring process for the Program Analyst position, Mr. Marshall never reviewed performance evaluations for either the plaintiff or Ms. Curatolo. Def.'s Reply, Ex. 3 (Marshall Depo.) at 51.

On August 26, 2003, the plaintiff and Ms. Smith participated in the transmission of a series of emails pertaining to the proper process for making purchasing requests. Id., Ex. 8 (Emails dated August 26, 2003). Although the emails demonstrate that there was friction between the plaintiff and Ms. Smith, Ms. Smith's response to the plaintiff's emails has no relation to the plaintiff's prior EEO complaint. Id., Ex. 1 (March 21, 2006 Order), Ex. 4 (Defendant's Requests for Admissions to Plaintiff No. 7). In addition, although the plaintiff alleges that Ms. Smith verbally attacked her on September 4, 2003, when the plaintiff asked Ms. Smith to date a purchase order, Compl. ¶ 46, and the plaintiff alleges that Ms. Smith became angry and was speaking in a loud and hostile tone, this altercation also has no relationship to the plaintiff's prior EEO complaint filed on December 6, 2002. Def.'s Mot., Ex. 1 (March 21, 2006 Order), Ex. 4 (Defendant's Requests for Admissions to Plaintiff No. 6).

As a result of the plaintiff's verbal altercations with Ms. Smith and Ms. Kirk, the plaintiff requested that she be assigned a different work location. Compl. ¶ 49. However, because the plaintiff's duties included receptionist type responsibilities, she had to be stationed near the entrance door of the office where she worked. Def.'s Mot., Ex. 5 (Raecke Aff.) at 5. Accordingly, the defendant moved Ms. Smith's and Ms. Curatolo's work stations approximately 100 to 120 feet away from the plaintiff's location to accommodate her request. Id.; Compl. ¶ 49; Exhibit 1 (March 21, 2006 Order), Ex. 4 (Defendant's Requests for Admissions to Plaintiff No. 8).

**C.      Other Allegations**

**1.      Performance Evaluations and Overtime Assignments**

The plaintiff alleges that the defendant "hindered her career advancement" because she

was unable to provide potential federal employers with her performance evaluations since she did not receive timely appraisals from the defendant from 1999 to 2001.  Compl. ¶ 15.  Although the plaintiff received several late performance evaluations, she was not the only employee within her office who did not receive timely performance appraisals, and other employees who also failed to receive timely performance appraisals were not members of  the plaintiff's protected classes.  Def.'s Mot., Ex. 1 (March 21, 2006 Order), Ex. 4 (Defendant's Requests for Admissions to Plaintiff Nos. 3 & 4).  In addition, the plaintiff alleges that her oral requests to work overtime were denied, while Mrs. Curatolo's and Mrs. Smith's requests were granted.  Compl. ¶¶37-38.  However, the defendant represents that he believed the plaintiff did not desire to work overtime if the work she would perform involved filing activities.  Def.'s Mot., Ex. 1 (March 21, 2006 Order), Ex. 4 (Defendant's Requests for Admissions to Plaintiff No. 2).

## 2.      The Commercial Activities Study

The plaintiff further alleges that she was negatively impacted by a Commercial Activities ("CA") study because her position descriptions did not fully describe her non-secretarial duties.  Compl. ¶ 12.  The CA study is an evaluation conducted by an agency "to determine whether it is more cost effective to procure a job from the commercial sector . . . or be performed by federal employees in-house."  Def.'s Mot., Ex. 5 (Raecke Aff.) at 6-7 & Attachment 2.  The government then lists the results it wants on a work statement and offers it up to contractors to bid.  Id. at 7.  In addition, the government bids on the contract itself.  Id.   All administrative functions for the entire Command, both on the East and West coasts, were subjected to the CA study.  Def.'s Mot., Ex. 9 (Declaration of Captain David Balk ) ("Balk Decl.") at 6.   Specifically, only job functions or billets were placed in the CA study and not the individual.  Id.   In April 2003, the plaintiff

advised Captain Bulk that she did not believe the description of her job position was correct.  Id.

A decision was made to review the plaintiff's position description and she was given the

opportunity to participate in the review but she declined to do so.  Id.  This review revealed that

all of the elements in her position description were accurate, with the exception of the code

assigned to her position and the name of her supervisor.  Id.  Accordingly, the position

description was modified to reflect the corrections.  Id.

## II.  Standard of Review

Courts will grant a motion for summary judgment under Rule 56(c) "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When ruling on a summary

judgment motion, courts must view the evidence in the light most favorable to the nonmoving

party.  Bayer v. Dep't of Treasury, 956 F.2d 330, 333-334 (D.C. Cir.1992); see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (holding that courts must draw "all justifiable

inferences" in the nonmoving party's favor and accept the nonmoving party's evidence as true).

However, "the nonmoving party 'must do more than simply show that there is some metaphysical

doubt as to the material facts.'" Bias v. Advantage Intern., Inc., 905 F.2d 1558, 1561 (D.C. Cir.

1990) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)).  Rather,

the nonmoving party must "provide evidence that would permit a reasonable [fact-finder] to

find" in its favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  Under Rule

56(c), "if a party fails to establish the existence of an element essential to that party's case and on

which that party will bear the burden of proof at trial," summary judgment is warranted.

Hazward v. Runyon, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  In considering a motion for summary judgment, "the court...may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

### III. Legal Analysis

**A.     The Plaintiff's Discrimination Claim**

**I.     The Program Analyst Position**

The plaintiff alleges that she was discriminated against on the basis of her race (black), sex (female), and her national origin (African American), when she was not selected for the GS-343-5/11 Program Analyst position with the NFESC and for other positions to which she had been detailed.  Compl. ¶¶ 53, 57.  In response, the defendant contends that even if the plaintiff can establish a prima facie case of discrimination under Title VII, the defendant had a legitimate non-discriminatory reason for her non-selection and the selection of Ms. Curatolo for the Program Analyst position.  Def.'s Mot. at 1.

In the absence of direct evidence of discrimination, which is the case here, a claim of discrimination is analyzed under the familiar burden-shifting test articulated in the seminal case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973).  Thus, to establish a prima facie case in the absence of direct evidence of discrimination, the plaintiff must demonstrate "that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).  If the plaintiff is able to establish her prima facie case of impermissible discrimination by a

preponderance of the evidence, the burden of production shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its actions."  Stella, 284 F.3d at 144 (citing McDonnell Douglas, 411 U.S. at 802).  If the employer is able to satisfy this burden of production, "he effectively "rebuts the plaintiff's prima facie case, and the presumption of discrimination created by the prima facie case 'drops out of the picture.'" Teneyck v. Omni Shoreham Hotel, 254 F.Supp.2d 17, 20-21 n. 3 (D.D.C. 2003) (quoting Dunaway v. Int'l. Bhd. of Teamsters, 310 F.3d 758, 762 (D.C. Cir. 2002)) (citation omitted).  "The plaintiff must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory."  Stella, 284 F.3d 144 (citing McDonnell Douglas, 411 U.S. at 804; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)).

For purposes of this motion, the defendant does not challenge that the plaintiff has failed to establish a prima facie case of discrimination based on her non-selection for the Program Analyst position.  Def.'s Mot. at 8.   Thus, the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for its challenged employment action.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  To satisfy its burden, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for [his] actions, which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."  St. Mary's Honor Ctr., 509 U.S. 502 (1993) (internal quotations omitted).  In satisfying the McDonnell Douglas burden of "articulat[ing] a legitimate, nondiscriminatory reason for . . . action[ ]" taken, "[t]he employer's burden . . . is merely one of production.  Hammond v. Chao, 383 F. Supp. 2d 47, 53 (D.D.C. 2005) (citing Burdine, 450 U.S. at 254-55.)  Therefore, "[t]he employer 'need not persuade the

court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether [he] discriminated against the plaintiff.'" Id. The Court finds that on the record in this case, the defendant has satisfied its burden of production.

In Water v. Gonzales, the Court concluded that the defendant had met its burden of production by showing that its decision to hire a white candidate over the plaintiff was based on peer evaluations.  374 F.Supp.2d 187, 194 (D.D.C. 2005).  Thus, the  plaintiff and the selectee were two of the five candidates who applied for the position as a supervisory paralegal in a division of the Department of Justice. Id. at 189-90.  Since the recommending and selecting officials considered the plaintiff and the selectee the top two candidates, they solicited the views attorneys and  paralegals what had recently worked with them for use in their selection decision. Id. at 190.  After the plaintiff received unfavorable recommendations from her colleagues, including other supervisory paralegals who did not supervise the plaintiff but were familiar with her work, the recommending officials recommended the selectee for the position.  Id. at 190-91. The Court held that the employer had met its burden of articulating a non-discriminatory reason for the plaintiff's non-selection.  Id. at 194.  In reaching this conclusion the Court found that "the [employer] had shown that the selectee had job performance appraisals superior to the plaintiff, that while current coworkers had high praise for the selectee they could not recommend the plaintiff because she rarely took initiative and was not as trusted with complex tasks as her colleagues."  Id.   Accordingly, the Court determined that "the sentiments of coworkers favoring [the selectee] and critical of the plaintiff [were] not based on race but rather [were] based on criteria relevant to the selection of a Supervisory Paralegal."  Id.

Here, the defendant contends that he selected Ms. Curatolo over the plaintiff because she was more qualified for the Program Analyst position.  Def.'s Mot. at 8.  The defendant has provided evidence that Mr. Marshall, the Financial Manager/Comptroller and selecting official, received the two candidates' application packages and convened a panel to review their resumes and interview the candidates. Def.'s Reply, Ex. 3 (Marshall Dep.) at 6.  The panel based their evaluation of the candidates on the grading of their resumes, interviews, and qualifications.  Id., Ex. 4 (Grading for Program Analyst GS-343-05/07/09/11); Ex. 6 Kirkpatrick Decl. at  6.  Each candidate was given a score of 198 by the panel. Id., Ex. 4 (Grading for Program Analyst GS-343-05/07/09/11 Position). Thus, the panel recommendation to the selecting official (Mr. Marshall) was that both candidates were equally qualified for the position.  Id., Ex. 7 (Flynn Decl.) at 5.

As a result of  each candidate receiving equal ratings by the panel, Mr. Marshall took the additional step of consulting each candidates' supervisor to gain additional information and clarification as to the information contained on their resumes. Id., Ex. 3 (Marshall Depo.) at 7-8.  Mr. Marshall contacted Captain David Bulk, Ms. Curatolo's supervisor, and Mr. Raecke, the plaintiff's supervisor.  Id., Ex. 8 (Marshall Dep.) at 6.  As a result of  speaking to the supervisors, Mr. Marshall gathered information pertaining to each of the candidates' work habits, the work they performed, and the level of their performance.  Id., Ex. 3 (Marshall Dep.) at 7.  Based on these discussions Mr. Marshall had with the supervisors and the panel members, his review of the candidates resumes and interview scores, he selected Ms. Curatolo for the GS-343-05/11 Program Analyst position.  Id., Ex. 3 (Marshall Dep.) at 7-8, 64.  In deciding to choose Ms. Curatolo for the position, Mr. Marshall contends that after speaking to the plaintiff's supervisor,

he learned that she had possibly embellished her resume, which caused Mr. Marshall to have

doubts as to her qualifications.  Id.  Specifically, Mr. Marshall contends that after conferring with

the plaintiff's supervisor, he concluded that Ms. Vines had not performed all of the functions as

represented on her resume.  Id.  This caused Mr. Marshall to question the accuracy of the

plaintiff's resume.  Id. at 64.  As a result of the plaintiff receiving an unfavorable

recommendation from her supervisor, whereas Ms. Curatolo did not, he selected Ms. Curatolo

for the GS-343-05/11 Program Analyst position.[4]  Def.'s Mot., Ex. 7 (Declaration of Stephen

Robert Marshall) ("Marshall Decl.") at 6.  Other judges of this Court have found that an

employer can satisfy his burden of production by representing that a plaintiff was not selected for

a position because she did not receive a favorable recommendation from her supervisor, Ross v.

Runyon, 859 F. Supp. 15, 19-22  (D.D.C. 1994) (employer's explanation that Caucasian-

American employee was selected over African-American employee for position of mail

equipment shops technician because he was more qualified and selectee received stronger

recommendations from supervisors while the non-selectee received recommendations from his

supervisors only with reservation was a legitimate nondiscriminatory reason.), Gonzales, 375 F.

Supp. 2d at 194.  This Court agrees with these decisions and therefore, the Court finds that on the

record in this case, the defendant has satisfied its burden of production by proffering a legitimate

nondiscriminatory reason for the plaintiff's non-selection.

Once the defendant has proffered a legitimate nondiscriminatory reason for its action, the

---

[4] Further, the defendant has provided evidence that during the hiring process for the
Program Analyst position, Mr. Marshall never reviewed performance evaluations for either
plaintiff or Ms. Curatolo.  Def.'s Reply, Ex. 3 (Marshall Dep.) at 51.

burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for

discrimination.  Reeves, 530 U.S. at143.  As the District of Columbia Circuit has explained:

> Assuming then that the employer has met its burden of producing a
> nondiscriminatory reason for its actions, the focus of proceedings
> at trial (and at summary judgment) will be on whether the jury
> could infer discrimination from the combination of (1) the
> plaintiff's prima facie case; (2) any evidence the plaintiff presents
> to attack the employer's proffered explanation for its actions; and
> (3) any further evidence of discrimination that may be available to
> the plaintiff (such as independent evidence of discriminatory
> statements or attitudes on the part of the employer) or any contrary
> evidence that may be available to the employer (such as evidence
> of a strong track record in equal opportunity employment).

Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc). The plaintiff

asserts that the defendant's proffered reason – that Ms. Curatolo was selected because she was

more qualified than the plaintiff – is a pretext for discrimination for two reasons: (1) the plaintiff

is actually more qualified than Ms. Curatolo and (2) the selection process was improper because

Ms. Smith had an alleged conflict of interest and should not have been on the panel.  Pl.'s Opp'n

at 10-13.  The Court notes that the plaintiff has submitted  no evidence supporting these

assertions by way of either declaration, affidavits, depositions, answers to interrogatories, or any

other fashion.  See Nichols v. Truscott, 424 F. Supp. 2d 124, 132-133 (D.D.C. 2006) ("On a

motion for summary judgment, the non-moving party's opposition must consist of more than

mere unsupported allegations or denials and must be supported by affidavits or other competent

evidence setting forth specific facts showing that there is a genuine issue for trial.") (citations

omitted).  Nevertheless, the plaintiff contends that she "was more qualified" for the Program

Analyst position than was Ms. Curatolo because she worked for the NFEC for thirteen years,

possessed a "financial/budget background"; worked in a "Budget Technician/Analyst position";

and had performed "Program Analyst duties"; including "reviewing, preparing, and distributing incoming/outgoing funding documents, tracking [the] availability of funds, setting up contract vendors within the financial systems and typing invoices."  Pl.'s Opp'n at 10.

In response, the defendant asserts that the plaintiff's "entire employment history is unsupported in the record," <u>see</u> Def.'s Reply at 7,  and "even if her employment history was supported, it is not material to this matter." <u>Id.</u>  Further, the defendant contends that "although [the] plaintiff apparently disagrees [with the assessment] that Ms. Curatolo [were equally] qualified . . . for the position, the voting members of the diverse interview panel determined otherwise; based on their review of the applicant's resumes, interviews, and the qualifications of each candidate . . . ." <u>Id.</u> at 7-8.  As noted above, as a result of  each candidate receiving equal ratings by the panel, Mr. Marshall took the  additional step of speaking to each candidate's supervisor to gain additional information and clarification as to the information contained on their resumes.  Def.'s Reply, Ex. 3 (Marshall Dep.) at 7-8.  By speaking to the supervisors, Mr. Marshall gathered information pertaining to each of the candidates' work habits, the work they did, and how well they did it.  Def.'s Reply, Ex. 3 (Marshall Dep.) at 7.  The defendant contends that based on the conversations Mr. Marshall had with the individuals' supervisors and panel members, and his review of their resumes and interview scores, he selected Ms. Curatolo for the GS-343-05/11 Program Analyst position.  Def.'s Reply, Ex. 3 (Marshall Dep.) at 7-8, 64.  In deciding to choose Ms. Curatolo for the position, Mr. Marshall contends that after speaking to the plaintiff's supervisor, he learned that the plaintiff potentially embellished her resume, which resulted in Mr. Marshall having doubts about her qualifications.  <u>Id.</u>

In reviewing an employer's decision to promote or hire based on a determination of

superior qualifications, the District of Columbia Circuit has stated:

> We must assume that a reasonable juror who might disagree with the employer's decision, but would find the question close would not usually infer discrimination on the basis of a comparison of qualifications alone. In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualification of candidates, or that the employer made a judgment call.

Aka, 156 F.3d at 1294. The panel determined that both the plaintiff and Ms. Curatolo were equally qualified for the Program Analyst position. As a result of the panel's findings, Mr. Marshall spoke to the supervisors of the candidates in order to gather additional information about each of the candidates. Def.'s Reply, Ex. 3 (Marshall Dep.) at 7. This Court is precluded from second-guessing an employer's selection decisions where it appears that the defendant was faced with selecting from candidates possessing the skills necessary for the Program Analyst position and there is no other evidence that discrimination played a part in the selection decision. "Title VII, [] does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986). Therefore, "unless disparities in qualifications 'are so apparent as to virtually jump off the page and slap [a court] in the face, [it] should be reluctant to substitute [its] views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise.'" see also Choates v. Powell, 265 F. Supp. 2d 81, 95 (D.D.C. 2003) (quoting Odum v. Frank, 3 F.3d 839, 846 (5th Cir. 1993). No such disparity exists.

Despite the state of the record, the plaintiff further contends that the defendant's proffered

legitimate nondiscriminatory reason was a pretext for discrimination because the selection

process was flawed due to Ms. Smith's presence on the panel even as a non-voting member.

Pl.'s Opp'n at 12-13.  According to the plaintiff, Ms. Smith had a conflict of interest because she

was a friend of Ms. Curatolo.  Reply to Plaintiff's Third Motion to Amend, Ex. 1 (Marshall Dep.)

at 14, 24-28.  And, although Ms. Smith was not a voting member on the panel, she did present

questions to Mr. Marshall concerning the accuracy of the plaintiff's resume. Id., Ex. 1 (Marshall

Dep.) at 38, 47, 50, 53, 68-69, 83.  The defendant contends at the time Mr. Marshall selected the

panel, he did not believe any conflict existed.  Id. at 57; Def.'s Reply at 10.  Further, the

defendant asserts that Mr. Marshall did not allow Ms. Smith to affect his determination,

therefore, his decision was influenced by the panel's findings and the comments from the

candidates' supervisors.  Id. , Ex. 1 (Marshall Dep.) at 50-51; Def.'s Reply at 10.  In

demonstrating that the defendant's reason is pretextual, "a reason cannot be proved to be 'pretext

for discrimination' unless it is shown both that the reason was false, and that discrimination was

the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original).

Here, notwithstanding the plaintiff's prima facie case of discrimination, she has failed to offer any

evidence to rebut the defendant's legitimate non-discriminatory explanation for his employment

decision.   Although the plaintiff contends that Ms. Smith may have  had a conflict of interest

while serving on the interview panel because of her friendship with Ms. Curatolo, there is no

evidence that her minimal involvement in the selection process had any influence on he ultimate

selection decision and , the Court therefore finds that the plaintiff has not demonstrated that the

defendant's legitimate nondiscriminatory reason for not selecting her for the Program Analyst

position was a pretext for discrimination.  Absent such evidence, the defendant is entitled to

summary judgment on the plaintiff's Title VII discrimination claim.

## II.   Other Positions for Which the Plaintiff was not Selected

The plaintiff alleges that throughout her employment with the defendant she was detailed to a number of positions for which she alleges she was never offered a permanent position. Compl. ¶¶ 19-23; Pl.'s Opp'n at 11.  In response, to her position that discrimination played a role in her non-selection to these positions, the defendant contends that the plaintiff has not presented any evidence "that she ever applied for any of the positions that she was detailed into except one, and for that single position[] she never timely sought EEO counseling or timely filed an EEO complaint."  Def.'s Reply at 9.

"Prior to instituting a court action under Title VII, a plaintiff alleging discrimination in federal employment must proceed before the agency charged with discrimination.  42 U.S.C. § 2000e-16(c)." Bayer, 956 F.2d at 332 (citing Brown v. Gen. Serv. Admin., 425 U.S. 820, 832-33 (1976); Kizas v. Webster, 707 F.2d 524, 543 (D.C. Cir. 1983), cert. denied, 464 U.S. 1042 (1984)).  This administrative remedies exhaustion requirement mandates that the plaintiff file a timely administrative claim.  Kizas, 707 F.2d at 543.   Equal Employment Opportunity Commission regulations require that an employee who believes that he or she has been discriminated against by a federal agency "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1) (emphasis added).  "[T]he reason for limiting claims to present violations (i.e., those for which a timely complaint was filed or for which a discriminatory scheme is alleged) is to 'protect employers from the burden of defending claims arising from employment decisions that are long past.'"  Milton v. Weinberger,

645 F.2d 1070, 1077 (D.C. Cir. 1981) (quoting Del. State Coll. v. Ricks, 449 U.S. 261 (1980)).

"This timeliness requirement operates like a statute of limitations and applies equally to the

seeking of informal counseling—which is a prerequisite to bringing a formal charge—and the

actual bringing of formal charges upon the completion of counseling." Singleton v. Harkin, 1996

WL 33322370, at *3 (D.D.C. 1996).

No where in the record is it indicated which, if any, specific position or positions the

plaintiff was detailed to and subsequently applied to fill as a permanent employee, but was not

selected. Nevertheless, the record is devoid of any indication that the plaintiff timely exhausted

her administrative remedies claim as to any EEO claims relating to her alleged non-selection to

any permanent positions to which she had been detailed. Rather, the record indicates that the

plaintiff only sought EEO counseling and filed an EEO complaint in connection with the

Program Analyst position in December 2002. Since the exhaustion of administrative remedies

operates like a statute of limitations, see James v. England, 332 F. Supp. 2d 239, 244 (D.D.C.

2004), the period for the plaintiff to seek EEO counseling and timely file an EEO complaint has

lapsed as to any position to which she was detailed and not selected to permanently fill prior to

filing her December 6, 2002 EEO complaint. Accordingly, the Court finds that summary

judgment as to any such position must be granted to the defendant.[5]

---

[5] The plaintiff also alleges in her complaint that she was subjected to discrimination when
her position was placed under the CA study, Compl. ¶¶ 12, 13, was denied overtime duy in July
2002, Compl. ¶¶ 37-39, and by not having timely performance appraisals conducted, Compl. ¶
17. The record also reveals that the plaintiff did not timely pursue EEO counseling or file an
EEO complaint as to any of these alleged discriminatory acts. Further, as noted above, as a result
of the plaintiff's willful disregard of this Court's orders, including the plaintiff's failure to
comply with this Court's discovery Orders and the Federal Rules of Civil Procedure, see footnote
2, supra, on March 21, 2006, the Court ordered that matters about which the plaintiff failed to

(continued...)

**B.**     **The Plaintiff's Retaliation Claim**

The plaintiff also alleges that Edith Dawn Smith and Susan M. Kirk retaliated against her by verbally attacking her following her participation in protected activity and that the defendant took no action to correct or prevent the retaliation, including declining to honor her request that her duty station be moved to a different location in the building. Compl. ¶¶ 63, 64. In response, the defendant contends that the plaintiff cannot establish a prima facie case of retaliation related to her verbal altercations with her co-workers. Def.'s Reply at 11. Moreover, to the extent that the plaintiff can establish a prima facie case of retaliation relating to a failure to relocate her work station, the defendant argues that the plaintiff can not demonstrate that the defendant's legitimate nondiscriminatory reason was a pretext for retaliation. Id.

Retaliation, claims are also subject to the McDonnell Douglas three-part burden-shifting framework. Morgan, 328 F.3d at 651 (D.C. Cir. 2003) (applying the McDonnell Douglas framework to a Title VII retaliation claim); Duncan v. Wash. Metro. Area Transit Auth., 214

---

[5](...continued)

properly respond in compliance with the Defendant's Requests for Admissions "shall be taken as established for the purpose of [this] action," and that the Court would further prohibit the plaintiff "from introducing evidence which would otherwise support the claims on which the plaintiff failed to provide supplemental information." See Def.'s Mot., Exhibit 1("March 21, 2006 Order."). Therefore, the plaintiff is deemed to have conceded that she never formally requested to work overtime and told others in her office that she did not desire to work overtime if the work involved filing. See id. Raecke Decl. ¶11; Ex. 4 (Defendant's Requests for Admissions to Plaintiff No. 2) & Ex. 1 (March 21, 2006 Order). In addition, the plaintiff is deemed to have conceded that she was not the only employee within her office who did not receive timely performance appraisals and that other employees who also failed to receive timely performance appraisals were not members of the plaintiff's protected classes. Id., Ex. 4 (Defendant's Requests for Admissions to Plaintiff Nos. 3 & 4) & Ex. 1 (March 21, 2006). The plaintiff has therefore failed to present any evidence of discrimination concerning the denial of overtime in July 2002 and the failure to timely receive performance appraisals. In addition, the plaintiff has not presented sufficient evidence to support her untimely CA study claim.

F.R.D. 43, 49-50 & n. 8 (D.D.C. 2003) (applying the McDonnell Douglas framework to a

Rehabilitation Act retaliation claim). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence
> a prima facie case of [ retaliation]. Second, if the plaintiff succeeds in proving the
> prima facie case, the burden shifts to the defendant "to articulate some legitimate, [non-
> retaliatory] reason for the employee's rejection".... Third, should the defendant carry this burden,
> the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the
> legitimate reasons offered by the defendant were not its true reasons, but were a pretext for
> [retaliation].... The ultimate burden of persuading the trier of fact that the defendant intentionally
> [retaliated] against the plaintiff remains at all times with the plaintiff.

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53(1981) (internal citations omitted)

(quoting McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973)).  To establish a prima facie

case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected activity,

(2) a reasonable employee would have found the challenged action materially adverse, and (3)

there existed a causal connection between the protected activity and the materially adverse

action. Stewart v. Evans 275 F.3d 1126 (D.C. Cir. 2002) (quoting Brown v. Brody, 199 F.3d 446,

452 (D.C. Cir. 1999);  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006); see

also Scott v. Kempthrone, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006). The plaintiff's

burden is not great, however, as the plaintiff "merely needs to establish facts adequate to permit

an inference of retaliatory motive." Forman v. Small, 271 F.3d 285, 299 (D.C. Cir. 2001).

The plaintiff engaged in statutorily protected activity when she filed her EEO complaint

on December 6, 2002 and therefore has satisfied the first prong of the prima facie case for

retaliation.  Def.'s Mot., Ex. 6 (Washington DC Field Office ORM Initial Interview Sheet).

Forkkio v. Powell, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002) (noting that the filing of a complaint

with the EEOC is protected activity).  As to the second prong of the prima facie case for

retaliation, the plaintiff contends that two of her co-workers (Ms. Smith and Ms. Kirk) retaliated against her by verbally attacking her following her participation in protected activity.  Compl. ¶¶ 63, 64.   It appears that the plaintiff is challenging as materially adverse (1) the verbal altercations she had with her two co-workers and (2) the defendant's alleged failure to take action to correct or prevent the altercations, including not relocating her work station.  "The anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington N., 548 U.S. at 67.  "Adverse actions can include actions that do not adversely affect promotion opportunities or that do not create tangible economic loss."  Gardner v. District of Columbia, 448 F. Supp. 2d 70 (D.D.C. 2006) (citing Villines v. United Bhd. of Carpenters and Joiners of Am., 999 F. Supp.  97, 106 (D.D.C. 1998)).  However, for example, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Burlington N., 548 U.S. at 68 (citation omitted).

Although the plaintiff alleges that two of her co-workers, (Ms. Smith and Ms. Kirk) mistreated her by engaging her in verbal altercations and not speaking to her, such conduct does not amount to an adverse action in the context of Title VII.  The Court also finds that the plaintiff's allegation that her immediate supervisor, Mr. Raecke communicates with all the Caucasian employees on a personal level while only communicating with the plaintiff regarding work related issues also does not rise to the level of a materially adverse action.  "[P]urely subjective injuries," such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions.  Conduct becomes actionable only when an employee "experiences materially adverse consequences affecting the terms, conditions, or privileges of

employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Holcomb v. Powell, 433 F.3d 889 (D.C. Cir. 2006) (citing Forkkio, 306 F.3d at 1130-31).  And, as the Supreme Court has stated, however, "'snubbing' by supervisors and co-workers are not actionable" as retaliation under Title VII.  Burlington N., 548 U.S. at 69 (citation omitted).

Even assuming, however, that the plaintiff could establish that the challenged actions were materially adverse, the plaintiff cannot demonstrate a causal connection between her protected activity and the challenged action.  The only protected activity the plaintiff engaged in was in December 2002, when she filed her EEO complaint and she subsequently encountered verbal altercations with the two co-workers in approximately April, August, and September 2003.  "To qualify as a causal connection, however, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be 'very close'."  Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (noting that a three or four month period between an adverse action and protected activity is insufficient to show a causal connection, and that a twenty month period suggest "no causality at all"); Mayers v. Laborer's Health & Safety Fund of N. Am., 478 F.3d 364 (D.C. Cir. 2007) (finding eight or nine month gap between employee's protected activity and project did not establish a casual connection to establish a prima facie case of retaliation); Sullivan-Obst v. Powell, 300 F. Supp. 2d 85, 92-93 (D.D.C. 2004) (lapses of over three months and over fifteen months were insufficient to support an inference of causation); Baker v. Potter, 294 F. Supp. 2d 33, 41 (D.D.C.2003) (two month gap is insufficient to establish temporal proximity).  Here, the almost four month interval between the filing of the EEO complaint and the first purported adverse

23

action and the approximate ten month hiatus from when the plaintiff's relocation request was not granted are too attenuated for the Court to find a causal connection between the protected activity and her  altercations with two of her co-workers, the  lack of personal communications with her supervisor, and the failure to relocate the plaintiff's work station.

As to the plaintiff's allegations  that the defendant retaliated against her by failing to relocate her work station, the Court again finds that the plaintiff can not demonstrate that this failure amounts to a materially adverse consequence affecting the terms, conditions, or privileges of the plaintiff's employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.  The Court has not found and the plaintiff has not cited any legal authority supporting her position that the failure to relocate the plaintiff's office amounts to a materially adverse consequence affecting the terms, conditions, or privileges of her employment.  Further,  assuming that the plaintiff could establish that she sustained objectively tangible harm by not having her work station relocated as she represented, the defendant has proffered a legitimate nondiscriminatory reason for not moving her work station.  The defendant represents that the plaintiff was not relocated because her work responsibilities include receptionist duties that require her to sit near  the entrance door to the office.  Def.'s Mot., Ex. 5 (Raecke Aff.) at 5.  Therefore, the defendant moved Ms. Smith and Ms. Curatolo approximately 100 to 120 feet away from the plaintiff 's work station to accommodate her relocation request.[6] Id.  Once the defendant has proffered a legitimate nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of evidence that the defendant's stated reason was not the real reason but instead a pretext for retaliation.  Wienberger, 729 F.2d at 790.  The plaintiff has failed

---

[6] It is not clear from the Record whether Ms. Kirk's work station was moved.

to present any evidence to demonstrate that the defendant's reason for not relocating her was a pretext for retaliation. Accordingly, the Court finds that the plaintiff cannot establish a prima facie case of retaliation. Therefore, the defendant's motion for summary judgment as to the plaintiff's retaliation claim must also be granted.

## IV.  Conclusion

Based on the foregoing analysis, the defendant's motion for summary judgment as to the plaintiff's claims of retaliation and discrimination based on race, sex, color, and national origin is **GRANTED.**[7]

**SO ORDERED**.

_____
REGGIE B. WALTON
United States District Judge

---

[7]An order consistent with this Memorandum Opinion has been issued.